FILED
U.S. Bankruptcy Court
Western District of NC

JAN 14 2005

David E. Welch, Clerk
Charlotte Division
MDW

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 02-34041 |
| **ACME PETROLEUM and FUEL** ) | Chapter 11 |
| **COMPANY, et al.,** ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |
| **ACME OF SOUTH CAROLINA, INC.,** ) | |
| **et al.,** ) | |
| ) | Adv. Proc. 04-3123 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **BDO SEIDMAN, LLP,** ) | |
| ) | |
| Defendant. ) | |

JUDGMENT ENTERED ON JAN 14 2005

**ORDER GRANTING MOTION TO DISMISS**

This matter is before the court on the Motion to Dismiss or in the Alternative to Compel Arbitration of BDO Seidman, LLP ("BDO Seidman"), and the response thereto of the plaintiffs. After consideration of the motion, the responses thereto, and the arguments of counsel, the court has concluded that BDO Seidman's Motion to Dismiss should be granted because the plaintiffs have failed to state a claim upon which relief can be granted. Because the court is granting BDO Seidman's Motion to Dismiss, the Motion in the Alternative to Compel Arbitration is denied as moot.

## I. PROCEDURAL HISTORY

1. Plaintiffs are former limited partners of Acme Properties Limited Partnership ("APLP"). The defendant provided accounting and audit services to Acme Services, Inc., which is the parent company of Acme Properties, Inc., the general partner of APLP. Acme Services, Inc. is also a debtor in a Chapter 11 proceeding, along with APLP, Acme Retail, Inc., Acme Properties, Inc., Moore Oil Company, Inc., and Acme Petroleum and Fuel Company (the "Acme Debtors"). On October 24, 2003, the court entered an Order confirming the Second Amended Plan of Liquidation of the Acme Debtors, and the plan became effective November 4, 2003.

2. The plaintiffs filed this action in the Richland County Court of Common Pleas in South Carolina, shortly after confirmation of the Acme Debtors' plan of reorganization.

3. BDO Seidman filed its Answer, removed this action to the United States District Court for the District of South Carolina, and moved to transfer venue of this case to the United States District Court for the Western District of North Carolina. The plaintiffs moved to remand this action to South Carolina state court or, in the alternative, for the South Carolina federal court to abstain.

4. The District Court denied plaintiffs' motion and granted BDO Seidman's motion to transfer venue. Following the

transfer of this case to the United States District Court for the Western District of North Carolina, the District Court entered an order transferring the case to this court for consideration as part of the bankruptcy proceedings of the Acme Debtors.

5. BDO Seidman subsequently filed in this court its Motion to Dismiss or in the Alternative to Compel Arbitration in which it argues that the plaintiffs' case should be dismissed because (1) the nature of the plaintiffs' claim is derivative and the plaintiffs' Complaint fails to satisfy the pleading requirements for a derivative suit; (2) plaintiffs have failed to join a necessary and indispensable party; and (3) plaintiffs have failed to allege the required elements of special duty owed or distinct injury to them in order to state a claim for individual recovery.

## II. STANDARD OF REVIEW

6. A complaint should be dismissed for failure to state a claim upon which relief may be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003).

## III. ALLEGATIONS OF THE COMPLAINT

7. In their Complaint, the plaintiffs allege that each of them is a business entity which holds a limited partnership interest in APLP. See Complaint, ¶ 1.

8. BDO Seidman, its agents and employees, provided accounting services and business advice to Acme Services, Inc., its subsidiaries, and affiliates beginning in the mid-1990s. See id., ¶ 20. For example, BDO Seidman had previously been involved in making recommendations for the organization of company structures, including the structure of APLP. See id., ¶ 19. In addition, BDO Seidman had, on various occasions, solicited the individual investment accounts of one or more of the plaintiffs. See id., ¶ 21.

9. BDO Seidman entered into an agreement with Acme Services, Inc. to perform an audit of the June 30, 2000, financial condition of the company in accordance with generally accepted accounting principles. See id., ¶ 17. BDO Seidman was aware and had notice that its work would be shared with, and relied upon, by the plaintiffs in this action. See id., ¶ 18.

10. Plaintiffs allege that BDO Seidman breached its duties to Acme Services, Inc., Acme Properties, Inc., and the plaintiffs in one or more of the following ways: (a) failing to meet the applicable standard of care for accountants and consultants in performing audits of balance sheets and related

4

statements of income and comprehensive income, stockholders' equity, and cash flows in accordance with generally accepted auditing standards; (b) failing to notify the plaintiffs of irregularities which it discovered with respect to accounts payable and other matters; (c) failing to timely notify management of recognized problems in adjusting balance sheets; (d) failing to advise management of problems with Acme entities; and (e) advising management "and understanding that management would share the advice with . . . plaintiffs . . . that the study and evaluation performed by [BDO Seidman] disclosed no condition that it believed to be a material weakness, when in fact, its agent(s) and/or employee(s) had discovered one or more material weaknesses." See id., ¶ 23.

11. Plaintiffs contend they have been injured as a result of these alleged breaches by BDO Seidman. See id., ¶ 24.

12. Finally, the plaintiffs allege that "Acme Properties Limited Partnership has been made aware of its claims against BDO Seidman, LLP, but has for whatever reasons, [sic] failed to take any action to institute litigation against the Defendant for the benefit of itself or the limited partners." Id., ¶ 3.

IV. **DISCUSSION**

    A. **Post-Confirmation Jurisdiction**

13. At the hearing on BDO Seidman's Motion to Dismiss or in the Alternative to Compel Arbitration, the court invited

5

counsel to address whether this court had post-confirmation "related to" jurisdiction over this adversary proceeding in light of the Third Circuit's recent decision in Resorts Int'l Fin., Inc., et al. v. Price Waterhouse & Co., LLP, 372 F.3d 154 (3rd Cir. 2004). In Resorts Int'l Fin., the Trustee for a litigation trust, which was established pursuant to the Plan to pursue litigation on behalf of certain creditors, retained Price Waterhouse post-confirmation to provide auditing and tax-related services to the litigation trust. Almost seven years after plan confirmation, the Trustee filed an adversary proceeding against Price Waterhouse, the primary allegation of which was that the accounting firm had erroneously reported in its audit that funds belonged to the debtor rather than to the litigation trust. See id. at 156-157.

14. The Third Circuit held that the accounting malpractice claims brought by the Trustee on behalf of the litigation trust did not come within the post-confirmation "related to" jurisdiction of the bankruptcy court because the matter lacked the required "close nexus" to the bankruptcy plan or proceeding. See id. at 169.

15. The "close nexus" standard is a variation of and a more narrow test than the test for "related to" jurisdiction set forth by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). The Pacor test for "related to"

jurisdiction is whether "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor, 743 F.2d at 994 (citations omitted).

16. In A.H. Robins Co. v. Piccinin, the Fourth Circuit adopted the Pacor test for "related to" jurisdiction. See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986); see also In re: Celotex, 124 F.3d 619, 625-26(4th Cir. 1997). And the Fourth Circuit has applied the Pacor test for "related to" jurisdiction in the post-confirmation context without adopting the more narrow "close nexus" standard. See Bergstrom v. Dalkon Shield Claimants Trust, 86 F.3d 364, 372 (4th Cir. 1996); Azalea Gardens Board & Care, Inc. v. WRH Mortgage, Inc., 215 F.3d 1317, 2000 WL 699676, **2 (4th Cir. 2000). Consequently, the test this court is to use is the Pacor "related to" test, rather than the "close nexus" test.

17. In applying the Pacor test to this case, the court finds that this adversary proceeding is "related to" the bankruptcy plan and proceeding and that this court has post-confirmation jurisdiction because it clearly impacts the

handling and administration of this bankruptcy estate. It involves claims that are reserved in the confirmed plan and are a part of this bankruptcy proceeding. Moreover, unlike the claims that arose post-confirmation in Resorts Int'l Fin., the facts on which the subject claims are based arose pre-petition and are derivative of claims of the bankrupt entities rather than a litigation trust. And, unlike the non-debtor claims at issue in Resort Int'l Fin., the claims plaintiffs seek to pursue are identified estate assets. In addition, this action was originally commenced by the plaintiffs on November 24, 2003, approximately one month to the day after the entry of the order confirming the Debtors' Plan on October 24, 2003. In contrast, the Trustee in Resorts Int'l Fin. did not initiate the adversary proceeding against Price Waterhouse until almost seven years post-confirmation.

18. The assignment of the claim to creditors who also continue to seek satisfaction in the ongoing bankruptcy does not remove the claims from the bankruptcy court's jurisdiction. Unlike in Resorts Int'l Fin., these creditors have not relinquished their status as creditors of the bankrupt entities. If they choose to pursue claims again BDO Seidman and are successful, it will result in a pro rata reduction of their claims in the bankruptcy.

19. Finally, even if this court adopted the "close nexus" standard of the Third Circuit, the court finds that for the reasons enumerated above, such a close nexus exists and that the plaintiffs claims come within the court's post-confirmation "related to" jurisdiction.

B. **Failure to State a Claim**

20. Having concluded that this case comes within the court's post-confirmation "related to" jurisdiction, the court has also concluded that the plaintiffs' Complaint must be dismissed for failure to state a claim upon which relief can be granted because of the absence of a special duty owed or distinct injury to the plaintiffs which is required to state a claim for individual recovery.

21. In a case that is directly on point to this case, Barger v. McCoy Hillard & Parks, the North Carolina Supreme Court reiterated the well-established general rule "that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." See Barger v. McCoy, Hillard & Parks, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997) (citations omitted); see also Energy Investors Fund, L.P. v. Metric Constructors, Inc., 351 N.C. 331, 525 S.E.2d 441 (2000)(holding that rule as articulated in Barger applies to limited partnerships).

9

22. In <u>Barger</u>, shareholders of The Furniture House, Inc. ("TFH") brought suit against an accounting firm that had allegedly provided incorrect financial information about TFH, after which TFH filed bankruptcy and was liquidated. The North Carolina Supreme Court, relying upon the well-established general rule quoted above, held that in their capacity as shareholders, the plaintiffs could not bring an action against the accounting firm for the lost value of their stock. "[T]he right to sue defendants for losses plaintiffs suffered as shareholders belonged solely to TFH and perished when the corporation was dissolved in bankruptcy." <u>Barger</u>, 346 N.C. at 660.

23. In <u>Energy Investors Fund, L.P.</u>, a limited partner in a "waste-to-energy" project sued engineering and construction firms for alleged breaches of duties owed as the result of work performed for the partnership. The North Carolina Supreme Court turned "to the North Caroline law of corporate shareholders for the legal principles applicable" to the case to find that "any action brought against defendants must be brought by the partnership." See <u>Energy Investors Fund, L.P.</u>, 351 N.C. at 335.

24. As in <u>Barger</u>, the only injury or damage plaintiffs allege they have suffered as the result of alleged breaches by BDO Seidman is in their capacities as limited partners of APLP. The right to sue BDO Seidman for these alleged claims belongs to

APLP, which is the subject of these bankruptcy proceedings, and all claims arising out of services BDO Seidman provided to Acme Services, Inc. were expressly reserved by Acme Services, Inc. and APLP in the bankruptcy. See Confirmation Order of October 24, 2003, at Section 4(x) [Docket No. 656], Case No. 02-34041; Confirmation Order of October 24, 2003, at Section 4(k) [Docket No. 109], Case No. 02-34034. Thus, plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

25. There are two exceptions to the rule that a shareholder cannot sue for injuries to his corporation: "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." Barger, 346 N.C. at 658 (citations omitted); see also Energy Investors Fund, L.P., 351 N.C. at 444 (applying same analysis based on Barger to limited partners.)

26. In this case, plaintiffs' Complaint does not allege facts that show any special duty allegedly owed them by BDO Seidman. For example, plaintiffs allege that BDO Seidman had previously been involved in making recommendations for the company structures, including the structure of APLP. See Complaint, ¶ 19. These allegations are not linked in any way to

any injury to plaintiffs and, if anything, relate to duties owed by BDO Seidman to APLP. The Complaint also alleges that BDO Seidman solicited the individual investment accounts of one or more of the plaintiffs but does not allege success in that alleged solicitation nor does it link this alleged solicitation to the breach of duty in providing accounting services to Acme Services, Inc. that plaintiffs claim caused their injury. See Complaint, ¶ 21. Finally, the Complaint alleges that "BDO was aware of, and had notice that its work would be shared with, and relied upon, by the plaintiffs in this action." See Complaint, ¶ 18. Plaintiffs do not allege that they relied on BDO Seidman's work in becoming limited partners. Neither have they alleged that BDO Seidman advised them individually as limited partners. Plaintiffs simply have not alleged any facts giving rise to a special duty owed by BDO Seidman to them.

27. The Complaint speaks only of BDO Seidman's agreement with and auditing work performed for Acme Services, Inc. and alleges breaches of BDO Seidman's duty to Acme Services, Inc. and plaintiffs arising out of that auditing work, making no distinction or connection between the duty allegedly owed by BDO Seidman to the corporation and to plaintiffs or APLP. See Complaint, ¶ 17, 20, 22, and 23. "Nowhere in the Complaint [do Plaintiffs] allege facts from which one might reasonably infer a relationship existed outside of the partnership sufficient to

create a duty [between plaintiffs and BDO Seidman]." See Energy Investors Fund, L.P., 351 N.C. at 331; see also Jackson, 140 N.C. App. at 509; Barger, 346 N.C. at 660. Accordingly, plaintiffs have failed to fit these claims into the "special duty" exception to the general rule, which therefore precludes their individual, non-derivative claims against BDO Seidman.

28. Under the second exception to the well-established rule in Barger, plaintiffs could proceed with this action if they had alleged a "separate and distinct" injury to themselves as limited partners. See Energy Investors Fund, L.P., 351 N.C. at 335. However, plaintiffs have failed to meet this standard because the only injury plaintiffs can allege as limited partners is "the loss of [their] investment, which is identical to the injury suffered by the other limited partners and by the partnership as a whole." See id.

C. **Other Grounds for Dismissal**

29. In addition to the arguments discussed above, BDO Seidman contends that the plaintiffs complaint should be dismissed because (1) under North Carolina law, their claims are derivative and their Complaint fails to state a claim upon which relief can be granted because they have not pleaded the required elements of a derivative suit and (2) plaintiffs have failed to join a necessary and indispensable party. The court is persuaded by the arguments contained in the defendant's brief

and finds that each of these is an independent basis for dismissal. However, because the court has concluded that plaintiffs' Complaint should be dismissed for failure to state a claim for individual recovery, it will not further discuss those defenses. Finally, the court is persuaded that if the Complaint stated a claim, it would have to be determined by way of arbitration. But, because the court has determined that the Complaint must be dismissed, that motion must be denied as moot.

It is therefore **ORDERED** as follows:

1. Defendant's Motion to Dismiss is GRANTED;

2. Defendant's Motion in the Alternative to Compel Arbitration is denied as MOOT; and

3. Plaintiffs' Complaint against defendant BDO Seidman, LLP, is DISMISSED.

_____
**George R. Hodges
United States Bankruptcy Judge**